Appeal Dismissed, Petition Denied, and Opinion filed June 25, 2009








Appeal
Dismissed, Petition Denied, and Opinion filed June 25, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00527-CV

____________

 

ABDEL HAKIM LABIDI, M.D., PH.D., Appellant

 

V.

 

MICHAEL D. SYDOW; SYDOW, MCDONALD,
KAISER & AHMED, L.L.P.; SYDOW & MCDONALD, L.L.P.; AND MOHAMMED SAMEER
AHMED, Appellees

 

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 2007-64047

 



 

and

 

No. 14-08-00757-CV

_______________

 

IN RE ABDEL HAKIM LABIDI, M.D.,
PH.D., Relator

                                                                                                                                               


ORIGINAL PROCEEDING

WRIT OF MANDAMUS

                                                                         
                                                                      

 








O P I N I O N

 

In this
consolidation of an interlocutory appeal and a petition for writ of mandamus,
Abdel Hakim Labidi challenges the district court=s order compelling
arbitration and staying proceedings in the trial court.  We dismiss the appeal
and deny the petition.

I.  Factual and Procedural Background

Appellant and
relator Abdel Hakim Labidi retained the law firm of Sydow, McDonald, Kaiser
& Ahmed, L.L.P. to represent him in a suit he filed against Exegenics, Inc.
in federal court.  Attorney Michael Sydow, a partner in the law firm, sent
Labidi an engagement letter on May 16, 2005, and Labidi signed and returned the
letter.  The two-page agreement contained ten provisions, the last of which
provided as follows:

10.     Binding
Arbitration:  In the event of any disagreement over the terms or
application of this agreement, or arising out of the attorney-client
relationship established herein, the parties hereto will work together in good
faith to resolve the disagreement.  If they are not successful, then the
parties agree to submit their disagreement to binding, non-appealable
arbitration before one attorney knowledgeable in this type of litigation.  Each
party to this agreement agrees that other than through such arbitration he will
not bring any claim or action against any other party to it regarding any such
disagreement.  Arbitration may be commenced by giving written notice of intent
to arbitrate.  The arbitrator will be selected by one of the retired judges
listed on the attachment.

Sydow tried the
case and obtained a judgment for Labidi in the amount of $674,871.00.  

In 2006, the law
firm split into two firms: Sydow & McDonald L.L.P. and Kaiser & Ahmed,
L.L.P.  Sydow=s firm settled the outstanding judgment against
Exegenics for approximtely $638,000.00, and the funds were wired to the firm=s trust account. 
Labidi then stated he would not settle the case for that amount, and Sydow=s firm returned
the settlement funds to the judgment debtor.  According to Sydow, Labidi owed
over $100,000 in legal fees at that time.  After the law firm returned the
settlement funds, Labidi contacted the judgment debtor directly; it is
undisputed that he settled the case for $638,000.  Thereafter, he refused to pay
allegedly outstanding legal fees.








Sydow initiated
arbitration in Harris County in 2007, whereupon Labidi filed suit in Dallas
County against Sydow, all of the law firms, and Sydown=s former partner,
attorney Mohammed Sameer Ahmed.  Labidi styled his allegations as claims for
breach of fiduciary duty, breach of contract, fraud, legal malpractice, and
negligence; he also sought a declaration that he owed no fees under the
engagement letter.  Labidi did not deny that he signed an engagement letter,
but he asserted that the letter he signed contained no arbitration clause;
according to Labidi, one or more of the defendants switched pages of the
agreement after Labidi signed it.  

The defendants
moved to compel arbitration and to transfer venue.  After the case was
transferred to Harris County, the defendants reurged the motion to compel
arbitration, and the trial court conducted an evidentiary hearing on May 16,
2008.  Ahmed testified that he did not see Labidi sign the agreement, but he
saw the agreement shortly after Labidi signed it and to Ahmed=s knowledge, the
pages of the agreement had not been changed.  Ahmed further testified that in
2005, the Sydow law firm included arbitration clauses in all its engagement
letters with all of its clients, and the engagement letter bearing Labidi=s signature was
the firm=s standard form
contract.  

The trial court
granted the motion to compel arbitration and stayed further proceedings in the
trial court.  Labidi challenges the trial court=s ruling through
an appeal as well as through a petition for writ of mandamus, and we have
consolidated both proceedings.

II.  Issues Presented

In three issues,
Labidi contends the trial court abused its discretion in granting the motion to
compel arbitration because the arbitration provision is unenforceable due to
(a) want or failure of consideration, (b) unconscionability and fraud in
the inducement, and (c) public policy.

 








III.   Analysis

Labidi presents
the same issues and arguments in both his petition for writ of mandamus and his
brief in the interlocutory appeal, but he takes no position regarding whether
the Federal Arbitration Act[1]
or the Texas General Arbitration Act[2]
applies.  No argument or evidence was presented on the issue either in the trial
court or in these proceedings.  In any event, a trial court=s order compelling
arbitration and staying proceedings in the district court is not subject to
interlocutory appeal under the federal[3]
or state arbitration schemes.[4] 
See Chambers v. O=Quinn, 242 S.W.3d 30,
31B32 (Tex. 2007)
(per curiam) (explaining that neither the FAA nor the TAA allow interlocutory
appeals from orders compelling arbitration); Gathe v. CIGNA Healthplan of
Tex., Inc., 879 S.W.2d 360, 362B63 (Tex. App.CHouston [14th
Dist.] 1994, writ denied) (holding that an order compelling arbitration and
abating state-court proceedings is an unappealable interlocutory order,
regardless of whether the FAA or TAA applies); cf. Green Tree Fin. Corp.BAla. v. Randolph, 531 U.S. 79, 89
(2000) (holding that an order compelling arbitration and dismissing remaining
claims is appealable as a final judgment).   

Because we lack
jurisdiction to entertain the appeal, it is hereby dismissed.  See N.Y.
Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 679 (Tex. 1990) (per
curiam) (holding that in the absence of express statutory authorization, the
assumption of appellate jurisdiction over an interlocutory appeal is
fundamental error).  We do however, have jurisdiction over Labidi=s petition for
writ of mandamus, which raises the same issues.








A.      Standard of Review

To be entitled to
mandamus relief, the relator must demonstrate that (1) the trial court
clearly abused its discretion and (2) an appellate remedy is inadequate.  In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135B36 (Tex. 2004) 
(orig. proceeding).  A trial court has no discretion to determine what the law
is or apply the law incorrectly; thus, its clear failure to properly analyze or
apply the law constitutes an abuse of discretion.  See Walker v. Packer,
827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding) (addressing law regarding
unconscionability).  But orders compelling arbitration can be appealed after
final judgment.  See Chambers, 242 S.W.3d at 32 (citing Green Tree
Fin. Corp., 531 U.S. at 89).  ABecause
arbitration is intended to provide a lower‑cost, expedited means to
resolve disputes, mandamus proceedings will often, if not always, deprive the
parties of an arbitration agreement=s intended
benefits when a compel‑and‑stay order is at issue; accordingly,
courts should be hesitant to intervene.@  In re
Poly-America, L.P., 262 S.W.3d 337, 347 (Tex. 2008).

B.      Failure or Want of Consideration

Labidi first
contends that Ano independent consideration [was] given for the
arbitration provision,@ but the law does not require separate
identifiable consideration  attributable to the arbitration provision.  Emerald
Tex., Inc. v. Peel, 920 S.W.2d 398, 402 (Tex. App.CHouston [1st
Dist.] 1996, no writ); see also In re First Merit Bank, N.A., 52 S.W.3d
749, 757B58 (Tex. 2001) (A[A]n arbitration
clause does not require mutuality of obligation, so long as the underlying
contract is supported by adequate consideration.@).  Here, the
provision is supported by reciprocal promises as well as by the underlying
contract.  See In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676B77 (Tex. 2006)
(orig. proceeding).  Thus, Labidi=s first issue does
not support his petition for writ of mandamus.[5]








C.      Unconscionability and Fraud in the Inducement

A[A]rbitrators must
decide if an entire contract was fraudulently induced, while courts must decide
if an arbitration clause was.@  Perry Homes, 258 S.W.3d at 589. 
Although Labidi contends that both pages of the agreement containing all of the
contract=s terms were
removed and replaced, he has not suggested that any provision other than the
arbitration clause was changed or added.  It therefore was appropriate for the
trial court to make the determination of whether Labidi=s allegations are
true, and to resolve any doubts about such factual matters in favor of
arbitration.  See Henry v. Gonzalez, 18 S.W.3d 684, 688B89 (Tex. App.CSan Antonio 2000,
pet. dism=d).  

1.       Procedural Unconscionability

Labidi=s
fraudulent-inducement argument and his assertion of procedural
unconscionability are both based on his allegation that his attorneys
substituted different pages to the engagement agreement after Labidi signed
it.  The success or failure of this argument Ais dependent upon
the existence of facts which allegedly illustrate unconscionability.@  Besteman v.
Pitcock, 272 S.W.3d 777, 788 (Tex. App.CTexarkana 2008, no
pet.) (quoting El Paso Natural Gas. Co. v. Minco Oil & Gas Co., 964
S.W.2d 54, 60B61 (Tex. App.CAmarillo 1997), rev=d on other grounds, 8 S.w.3d 309
(Tex. 1999)).  The real parties in interest deny the allegation, and the trial
court=s ruling indicates
that it resolved the conflicting evidence in their favor.  Where, as here, the
facts impliedly found by the trial court are supported by the record, we will
not disturb them.  See id. 

 

 








2.       Substantive Unconscionability

Regarding
substantive unconscionability, Labidi argues that he received Ano benefit of the
bargain@ for the loss of
his right to jury trial, discovery, and unspecified civil and evidentiary
protections.  If such arguments were sufficient, then arbitration provisions
would be unconscionable per se, but this is not the case: arbitration
agreements are not inherently unconscionable.  Palm Harbor Homes, 195
S.W.3d at 678; Emerald Tex., 920 S.W.2d at 402.  Labidi=s arguments are
similar to those rejected in Emerald Texas, in which the evidence of
unconscionability was as follows: 

The contract
clause was drafted by Emerald.  I was not represented by a lawyer when I
entered into this contract.  During the discussions about this contract no
mention was made concerning the arbitration clause or its alleged relationship
to design and building defects.  The contract was presented as a standard
earnest money contract.  I was not informed of the existence of the arbitration
clause nor its alleged effect on our rights.  I do not have any expertise in
the area of homebuilding or negotiating real estate transactions.  I did not
receive any consideration for allegedly foregoing my legal right to a trial. 

Emerald Tex., 920 S.W.2d at
402.

Contrary to Labidi=s suggestion, even
disputes between a lawyer and client that involve their contract, the
attorney-client relationship, or services rendered or fees charged to the
client are properly referable to arbitration.  Henry, 18 S.W.3d at 687B89; Porter
& Clements, L.L.P. v. Stone, 935 S.W.2d 217, 219B23 (Tex. App.CHouston [1st
Dist.] 1996, no writ).  The arbitration agreement is not grossly one-sided, but
is instead a bilateral agreement to arbitrate.  See In re Poly-America,
262 S.W.3d at 348B49.  It therefore is not substantively
unconscionable.

D.      Public Policy








Finally, Labidi
argues that the arbitration provision is invalid because it violates Texas
public policy.  But Texas public policy favors arbitration.  See Forest Oil
Corp. v. McAllen, 268 S.W.3d 51, 56 (2008); First Merit Bank, 52
S.W.3d at 753.  And Aas both the federal and state arbitration
acts pointedly exclude immediate review of orders compelling arbitration, any
balancing [of the benefits and detriments of delaying proceedings] must tilt
strongly against mandamus review.@  In re Gulf
Exploration, LLC,  52 Tex. Sup. Ct. J. 612, 2009 WL 1028049, at *3 (Tex.
Apr. 17, 2009)).  

Although Labidi
has not explained why he lacks an adequate remedy by appeal, the Texas Supreme
Court has noted that A[t]he >adequacy= of an appeal may
be a closer question when the legislature has weighed in on both sides of the
balance.@  Id.
(citing In re Poly-America, 262 S.W.3d at 352).  Some of Labidi=s arguments seem
to be directed toward bringing his petition for writ of mandamus within this
category. 

1.       Section 171.002 of the Civil Practice and Remedies
Code

Relying on section
171.002 of the Civil Practice and Remedies Code, Labidi argues that the
arbitration provision is unenforceable due to the absence of procedural
safeguards, including independent advice of counsel, bold type, and specific
agreement to the arbitration provision.  But section 171.002 provides as
follows:

(a)     This chapter [i.e., the
Texas Arbitration Act] does not apply to:

(1)     a collective bargaining
agreement between an employer and a labor union; 

(2)     an agreement for the acquisition
by one or more individuals of property, services, money, or credit in which the
total consideration to be furnished by the individual is not more than
$50,000, except as provided by Subsection (b); 

(3)     a claim for personal
injury, except as provided by Subsection (c); 

(4)     a claim for workers= compensation benefits; or 

(5)     an agreement made before
January 1, 1966. 

(b)     An agreement described by
Subsection (a)(2) is subject to this chapter if:

(1)     the parties to the
agreement agree in writing to arbitrate; and 

(2)     the agreement is signed by
each party and each party=s attorney. 

(c)     A claim described by
Subsection (a)(3) is subject to this chapter if:

(1)     each party to the claim, on
the advice of counsel, agrees in writing to arbitrate; and 

(2)     the agreement is signed by
each party and each party=s attorney. 

 








Tex. Civ. Prac. & Rem. Code Ann. ' 171.002 (emphasis
added).  This statute has no application here: a legal malpractice claim is not
a personal injury claim,[6]
and section 171.002 does not apply to service contracts in excess of $50,000. 
Here, the fees at issue are, and were expected to be, more than $100,000. 
Moreover, if the FAA appliesCi.e., if the attorney-client agreement
touches on interstate commerceCthen such state-specific safeguards are
preempted if they would affect the arbitration agreement=s enforceability. 
See In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69B70 (Tex. 2005)
(per curiam). 

2.       Ethics Opinion

In his
supplemental brief, Labidi cites an October 2008 opinion from the Texas Ethics
Commission in which the Commission opined as follows:

It is permissible
under the Texas Disciplinary Rules of Professional Conduct to include in an
engagement agreement with a client a provision, the terms of which would not be
unfair to a typical client willing to agree to arbitration, requiring the
binding arbitration of fee disputes and malpractice claims provided that
(1) the client is aware of the significant advantages and disadvantages of
arbitration and has sufficient information to permit the client to make an
informed decision about whether to agree to the arbitration provision, and
(2) the arbitration provision does not limit the lawyer=s liability for
malpractice.

Op. Tex. Ethics Comm=n No. 586 (2008); see also ABA Comm. on Ethics and Prof=l Responsibility,
Formal Op. 02-425 (2002) (reaching a similar conclusion).  The  Commission
stated that its conclusion was based on Rule 1.03(b) of the Texas Disciplinary
Rules of Professional Conduct, which provides, AA lawyer shall
explain a matter to the extent reasonably necessary to permit the client to
make informed decisions regarding the representation.@  Tex. Disciplinary R. Prof=l Conduct 1.03(b), reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit.
G app=x A (Vernon 2005)
(Tex. State Bar R. art. X, '  9 (Vernon
2005)).  As the Commission further explained, AThe scope of the
explanation will depend on the sophistication, education and experience of the
client.@  








But opinions of
the Texas Ethics Commission are advisory rather than binding.  State ex rel.
Young v. Sixth Judicial Dist. Court of Appeals at Texarkana, 236 S.W.3d
207, 212 n.22 (Tex. Crim. App. 2007); Landers v. State, 229 S.W.3d 532,
535 (Tex. App.CTexarkana 2007), aff=d, 256 S.W.3d 295
(Tex. Crim. App. 2008); In re Goodman, 210 S.W.3d 805, 812 (Tex. App.CTexarkana 2006,
orig. proceeding).[7] 
Moreover, the Commission expressed no opinion regarding the enforcement of
arbitration clauses, stating, AIt is beyond the authority of this
Committee [sic] to address questions of substantive law relating to the
validity of arbitration clauses in agreements between lawyers and their
clients.@  Because it is
likewise beyond the authority of this court to disregard public policy as
articulated by the state and federal legislatures and high courts,[8]
Labidi=s arguments do not
support his petition.  








V.  Conclusion

We dismiss Labidi=s interlocutory
appeal for want of jurisdiction.  Because he has not demonstrated that the
trial court clearly abused its discretion and that he lacks an adequate
appellate remedy, we deny his petition for writ of mandamus. 

 

 

 

 

/s/      Eva
M. Guzman

Justice

 

Panel consists of Justices Guzman and Boyce and
Senior Justice Mirabal.*

 

 

 

 









[1]  9 U.S.C.A. '' 1B16 (1997).





[2]  Tex. Civ.
Prac. & Rem. Code Ann. ''
171.001B.098 (Vernon 2005).





[3]  See 9 U.S.C.A. ' 16(b)(2); Perry Homes v. Cull, 258 S.W.3d 580, 586 (Tex. 2008).






[4]  See Tex.
Civ. Prac. & Rem. Code Ann. '
171.098(a); Chambers v. O=Quinn, 242 S.W.3d 30, 31
(Tex. 2007) (per curiam).





[5]  Labidi alternatively asserts that the contract
provision at issue is not an arbitration agreement because it does not allow
the parties to voluntarily select an arbitrator of their choice.  This is not a
requirement.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 171.041(a) (AThe method of appointment of arbitrators is as
specified in the agreement to arbitrate.@). 
In a related argument, he contends that the arbitration agreement is
unenforceable because Sydow failed to attach the referenced list of retired
judges, one of whom was to select an arbitrator.  The attorneys correctly point
out that even if that the reference to such a list were unenforceable, that
sentence of the arbitration provision is severable, and an adequate remedy for
the omission is available.  See id. '
171.041(b) (court on application of party shall appoint qualified arbitrators
if agreed method fails or cannot be followed); Bird v. Kornman, 152
S.W.3d 154, 159 (Tex. App.CDallas 2004,
pet. denied).





[6]  Taylor v. Wilson, 180 S.W.3d 627, 631 (Tex.
App.CHouston [14th Dist.] 2005, pet. denied).





[7]  Labidi also offers no argument or authority for his
unexpressed premise that this opinion applies retrospectively. 





[8]  In this connection, we additionally note that the
procedural safeguards Labidi proposes as a matter of state public policy
conflict with the Federal Arbitration Act.  See Buckeye Check Cashing, Inc.
v. Cardegna, 546 U.S. 440, 446 (2006) (stating that enforceability of an
arbitration agreement does not A>turn on >[state] public policy and contract law@); In re D. Wilson Constr. Co., 196 S.W.3d 774,
780 (Tex. 2006) (explaining that the FAA preempts the TAA if the latter imposes
an enforceability requirement not found in the former);  Nexion, 173
S.W.3d at 69 (AThe TAA interferes with the enforceability of the
arbitration agreement by adding an additional requirementCthe signature of a party=s counselCto arbitration agreements in personal injury cases.@).  As explained by the United States Supreme Court:

 

[T]he text of ' 2
[of the FAA] provides the touchstone for choosing between state‑law
principles and the principles of federal common law envisioned by the passage
of that statute: An agreement to arbitrate is valid, irrevocable, and
enforceable, as a matter of federal law, . . . Asave upon such grounds as exist at law or in equity
for the revocation of any contract.@  9
U.S.C. ' 2 (emphasis added).  Thus state law, whether of
legislative or judicial origin, is applicable if that law arose to
govern issues concerning the validity, revocability, and enforceability of
contracts generally.  A state‑law principle that takes its meaning
precisely from the fact that a contract to arbitrate is at issue does not
comport with this requirement of '
2. . . .  A court may not, then, in assessing the rights of
litigants to enforce an arbitration agreement, construe that agreement in a
manner different from that in which it otherwise construes nonarbitration
agreements under state law.  Nor may a court rely on the uniqueness of an
agreement to arbitrate as a basis for a state‑law holding that
enforcement would be unconscionable, for this would enable the court to effect
what we hold today the state legislature cannot.

 

Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (case
citations omitted).  





* 
Senior Justice Margaret G. Mirabal sitting by assignment.