**Affirmed and Memorandum Opinion filed January 6, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00446-CV

## HOUSTON ANUSA, LLC D/B/A AUTONATION USA HOUSTON, Appellant

## V.

## WALTER SHATTENKIRK, Appellee

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-27755**

## MEMORANDUM OPINION

Appellant Houston ANUSA, LLC d/b/a AutoNation USA Houston ("AutoNation") appeals the trial court's interlocutory order denying its motion to compel arbitration. In its first issue AutoNation contends it proved a valid arbitration agreement existed and that appellee Walter Shattenkirk failed to establish the affirmative defense of unconscionability. In the alternative AutoNation requests that we remand to the trial court for an evidentiary hearing. Concluding the trial court

could have concluded that the agreement was unconscionable and denied arbitration on that basis, we affirm the trial court's order denying AutoNation's motion to compel arbitration.

## BACKGROUND

Appellant AutoNation owns and operates a car dealership in Houston, Texas. AutoNation hired appellee Walter Shattenkirk as a general manager in May 2017. In August 2017, Shattenkirk alleged that his superior at the car dealership made racist comments, which Shattenkirk reported to a Senior Director at AutoNation. One month later AutoNation placed Shattenkirk on a Performance Improvement Plan, and subsequently terminated Shattenkirk about two months later, in November 2017. Shattenkirk sued AutoNation alleging his termination was due to discrimination and retaliation.

AutoNation filed a motion to compel arbitration in which it alleged that Shattenkirk entered into a binding arbitration agreement when he accepted employment with AutoNation. AutoNation attached the agreement to its motion to compel. The agreement provided in part:

> Both employee signing below (the "Employee") and the Company (as defined below) agree that any claim, dispute, and/or controversy between them which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with Employee's seeking employment with, employment by, termination of employment from, or other association with the Company, shall be resolved through mandatory, neutral, binding arbitration on an individual basis only . . . This Agreement covers all theories and disputes . . . and includes, but is not limited to, any claims of discrimination, harassment, breach of contract, tort, or alleged violations of statute, regulation, or ordinance, or any claims in equity. Any arbitration hereunder shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq., hereinafter the "FAA") and not by any state

2

law concerning arbitration, and, except as modified by this Agreement, in conformity with the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the substantive law governing the claims pled.

AutoNation also attached the declaration of Crystal Johnston, a human resources manager, to its motion to compel.

In response to AutoNation's motion to compel, Shattenkirk alleged that the arbitration agreement was not valid because he had not signed it, and, if the agreement was valid, it was unconscionable because the cost of arbitration was so high that it effectively prevented Shattenkirk from asserting his claims. Shattenkirk attached to his response an invoice for arbitration in another case, and a declaration averring that he did not recall consenting to any arbitration agreement by electronic means and that the costs of arbitration would pose a "significant hardship" on his family's finances.

The trial court denied AutoNation's motion to compel arbitration without a hearing and AutoNation filed this interlocutory appeal.

## ANALYSIS

In two issues AutoNation challenges the trial court's order denying its motion to compel, and, in the alternative, requests a hearing on its motion to compel arbitration.

## I.     Standard of Review and Applicable Law

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo. *Id.*; *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008).

Generally, a party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims at issue fall within the scope of that agreement. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). Here, the parties agree that the Federal Arbitration Act ("FAA") applies and that, if a valid arbitration agreement exists, Shattenkirk's claims fall within its scope. "Once the arbitration movant establishes a valid arbitration agreement that encompasses the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration." *Rodriguez v. Tex. Leaguer Brewing Co. LLC*, 586 S.W.3d 423, 428 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (quoting *Human Biostar, Inc. v. Celltex Therapeutics Corp.*, 514 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)).

## II.     Unconscionability

Assuming without deciding that a valid arbitration agreement exists, if that agreement is unconscionable, it is unenforceable. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 891 (Tex. 2010). Because Shattenkirk raised the affirmative defense of unconscionability of the agreement, we first address that issue as it is an independent basis to affirm the trial court's decision.

If the party seeking arbitration meets its two-pronged burden to show the agreement's validity and scope, the party opposing arbitration then has the burden to raise an affirmative defense to enforcement of the arbitration agreement. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A party opposing arbitration can raise a contract-formation defense, arguing that no agreement to arbitrate was ever formed, or a contract-validity defense such as fraud, unconscionability, duress, or illusory contract. *See In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 187 (Tex. 2009)

4

(contract-formation defense); *In re Olshan*, 328 S.W.3d at 891–92 (contract-validity defense).

In the trial court Shattenkirk raised a contract-validity defense arguing the agreement was unconscionable because the costs of arbitrating, as required by the agreement, would be excessive and would impose an unfair financial burden on him. Texas law renders unconscionable contracts unenforceable. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Texas further recognizes both substantive and procedural unconscionability. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). "The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 859 (Tex. App.—Houston [14th Dist.], 2007, orig. proceeding) (quoting *In re Firstmerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding)). Here, because the one-sidedness of the arbitration agreement is at issue, we will address its substantive unconscionability. *See Royston, Rayzor*, 467 S.W.3d at 499.

The party opposing arbitration on the basis of excessive costs has the burden to show the costs of arbitration would be prohibitively expensive and must submit specific evidence showing the likelihood of incurring such costs for the particular arbitration. *In re Olshan*, 328 S.W.3d at 893, 895 & n.5. Such specific evidence can consist of invoices, expert testimony, reliable cost estimates, or other comparable evidence. *Id*. at 895; *BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711,

5

724 (Tex. App.—Fort Worth 2015, no pet.).

In support of his claim of unconscionability Shattenkirk presented his own declaration, the declaration of his attorney, Clayton Craighead, and an invoice from an arbitration in another case. In Shattenkirk's declaration, pertinent to this issue, he stated:

- He was terminated by AutoNation in November 2017 and did not find new employment until February 2020 where he was earning significantly less than with AutoNation;

- He incurred "significant debt" since being terminated from AutoNation; and

- Requiring him to pay more than litigation costs would pose a significant hardship on his family and push his finances further into debt.

Craighead, Shattenkirk's attorney, stated:

- The invoice from the unrelated arbitration was conducted in a single-plaintiff discrimination case and all but $200 in costs was borne by the employer pursuant to the rules of the American Arbitration Association;

- Arbitration fees in the instant case could reach as high as $45,000 due to complicated factual issues and "more combative" defense counsel;

- Because the Arbitration Agreement requires arbitration to be conducted pursuant to the Federal Rules of Evidence and Federal Rules of Civil Procedure, it will be more costly;

- Because the Arbitration Agreement does not limit discovery or dispositive motions, there will be no cost savings on attorney fees in arbitration; and

- Based on the attorney's experience, litigation costs would be approximately $450 per hour and litigation would use approximately 7.1 hours of the attorney's time;

The United States Supreme Court in *Green Tree Fin. Corp.-Ala. v. Randolph*,

531 U.S. 79, 92 (2000) created a burden-shifting test in which the party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. Once met, the burden shifts to "the party seeking arbitration [who] must come forward with contrary evidence." *Id.*; *see also In re Poly-Am.*, 262 S.W.3d at 348 ("The burden of proving such a ground—such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract.").

In determining whether the costs of arbitration are excessive, courts apply a case-by-case analysis and focus on the following factors: (1) the party's ability to pay the arbitration fees and costs; (2) the actual amount of the fees compared to the amount of the underlying claim(s); (3) the expected cost differential between arbitration and litigation; and (4) whether that cost differential is so substantial that it would deter a party from bringing a claim. *In re Olshan*, 328 S.W.3d at 893–94. A comparison of the total costs of the two forums, litigation and arbitration, is the most important factor. *Id.* at 894–95; *Brooks*, 456 S.W.3d at 724.

The Texas Supreme Court held that a complaining party must produce "*some evidence* that a complaining party will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights." *In re Poly-Am., L.P.*, 262 S.W.3d at 356 (emphasis in original). When we review the record for evidence of the above factors, we find some evidence that (1) arbitration fees in a case such as this could be as high as $45,000[1]; compared to an offer from Shattenkirk of $135,000 to settle the claims[2]; (2) litigation costs could be as low as $400; and (3) Shattenkirk's ability to pay even half of the arbitration fees and costs would pose a

---

[1] The supreme court has concluded that a party does not have to actually incur the cost of arbitration before it can become too burdensome. *See In re Olshan*, 328 S.W.3d 895.

[2] Shattenkirk pled for a higher level of damages.

financial hardship on Shattenkirk and his family, which would deter his ability to bring a claim.

AutoNation did not contest the above evidence in the trial court. AutoNation attached email communications between AutoNation and Shattenkirk's attorney to its motion to compel arbitration. The emails reflect the attorneys' negotiations about arbitration and attempts to agree on an arbitrator and the arbitrator's costs. Shattenkirk asked AutoNation about management of the arbitration noting that the agreement was "silent on who pays etc." AutoNation responded that "AutoNation and the Claimant usually agree to split the arbitration costs."

On appeal AutoNation argues that Shattenkirk failed to establish his affirmative defense because he did not establish that the agreement required him to share arbitration fees and costs, and he did not produce sufficient evidence that the arbitration costs will preclude him from vindicating his statutory rights. The agreement is silent as to how the fees and costs of arbitration are to be paid. The only evidence in the record regarding payment of fees and costs is AutoNation's email stating that AutoNation and the Claimant usually agree to split the costs. AutoNation did not present evidence to controvert Shattenkirk's evidence that arbitration could cost as much as $45,000 compared to the approximately $400 cost of litigation. AutoNation also failed to controvert Shattenkirk's evidence that the costs of arbitration would cause him to experience financial hardship and incur further debt. AutoNation further did not controvert evidence that it would require Shattenkirk to split the costs of arbitration.

Arbitration is intended to be a lower cost, efficient alternative to litigation. *See In re Olshan*, 328 S.W.3d at 893. Yet the evidence in this case is the exact opposite. "Where these justifications are vanquished by excessive arbitration costs that deter individuals from bringing valid claims, the unconscionability doctrine" should

8

protect the employee. *See id.* The Texas Supreme Court has recognized that fee splitting of arbitration costs in employment agreements can have the effect of deterring potential litigants from vindicating their statutory rights in an arbitral forum. *See In re Poly-Am.*, 262 S.W.3d at 355. There is no provision in the arbitration agreement that would cap the amount of money Shattenkirk would be required to pay. Concluding the evidence supports the trial court's implied finding that the agreement was unconscionable, we overrule AutoNation's first issue on appeal.[3]

## CONCLUSION

We conclude the trial court did not abuse its discretion in denying the motion to compel arbitration and affirm the trial court's order.

/s/     Jerry Zimmerer
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

---

[3] Having determined that the trial court did not abuse its discretion in finding the arbitration agreement unconscionable we need not address AutoNation's alternative issue requesting remand for a hearing on formation of the agreement.